### Elliot HARRISON and Ruth Z. Harrison, his wife

v.

### NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.

### Civ. A. No. 81–4957.

United States District Court, E.D. Pennsylvania.

July 13, 1983.

---

Robert F. Ruehl, Ruehl & Blackman, Doylestown, Pa., for plaintiff.

Thomas M. Regan, Cozen, Begier & O'Connor, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Before the court is defendant Nationwide Mutual Fire Insurance Company's motion for partial summary judgment. Viewed in the light most favorable to plaintiffs Ruth and Elliot Harrison, the facts forming the background of the motion are as follows:

A fire destroyed plaintiffs' home on September 15, 1980. Plaintiffs notified defendant of the loss on the day the fire occurred. Police authorities investigated the fire and determined that it was of an incendiary cause. Shortly after the fire defendant began its own investigation of the loss. Conducted by Nationwide's most experienced fire adjuster as well as an independent fire investigator retained by the company, the investigation led to the denial of liability to plaintiffs on February 9, 1982. Nationwide based the denial of liability on evidence indicating that the fire was caused by arson and that plaintiffs misrepresented the amount of damage sustained by them.

Plaintiffs initiated suit by filing a six-count complaint in the Court of Common Pleas of Bucks County. Defendant removed the suit to this court pursuant to 28 U.S.C. § 1441. Count I of the complaint is for benefits allegedly due under the policy and is not the subject of this summary judgment motion. Counts II through VI, which are the targets of the motion, all seek compensatory and punitive damages.[1]

Defendant filed a motion to dismiss these five counts. Following oral argument, plaintiffs requested and defendant agreed that the motion to dismiss be treated as a motion for partial summary judgment under Federal Rule of Civil Procedure 56.[2] For the reasons that follow, the motion is granted.

---

1. The second count alleges the infliction of emotional distress on Elliot Harrison (Mr. Harrison suffered a heart attack on January 13, 1981, allegedly the result of defendant's bad faith conduct); the third alleges libels and slanders relating to the defendant's denial of the claim; the fourth alleges misrepresentation by the defendant in the policy as issued to the plaintiff; the fifth alleges violation of the "Unfair Insurance Practices Act" of Pennsylvania, and the sixth alleges bad-faith dealings regarding the investigation and denial of the plaintiffs' claim.

2. See also FRCP 12(b).

## Counts II and VI

The numerous memoranda filed by defendant in this case rely primarily upon the Pennsylvania Supreme Court's decision in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981). In *D'Ambrosio*, plaintiff's motorboat and outboard motor were damaged. Defendant insurance company denied plaintiff's claim. Plaintiff alleged that "the adjuster was wrong in the conclusions he had reached, and had not based his conclusions on probative evidence." 431 A.2d at 968. Plaintiff further alleged that defendant continued to refuse the claim despite its inability to "produce any information whatsoever which indicated in any way that the original investigation was valid." 431 A.2d at 967–68. Plaintiff's complaint included a count seeking compensatory and punitive damages.

In upholding a dismissal of that cause, the court expressly refused to adopt the approach of the Supreme Court of California, which allows recovery of emotional distress and punitive damages based upon an insurer's bad-faith conduct in denying a claim. *See Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973). Instead, the *D'Ambrosio* court held that the Pennsylvania state legislature had precluded such relief when it passed the "Unfair Insurance Practices Act" 40 PA.STAT.ANN. § 1171.1–1171.15 (Purdon 1982), which directs complaints against insurers through administrative rather than judicial channels.[3] The court concluded that in light of the remedy created by the legislature, a judicially created cause of action would be unnecessary to deter bad-faith conduct.

In footnote five of its *D'Ambrosio* opinion, the court very slightly qualified its broad holding:

> the possibility cannot be ruled out that emotional distress damages may be recoverable on a contract where, for example, 'the breach is of such a kind that serious emotional disturbance was a particularly likely result.' RESTATEMENT (SECOND) OF CONTRACTS [§ 353 (1981)].

431 A.2d at 970 n. 5. The court observed that the record in *D'Ambrosio* fell "far short" of establishing such a breach.

Counts II and VI cannot survive the broad holding of *D'Ambrosio*, directing accusations of bad-faith dealings to the Insurance Commissioner. Footnote five, which has been all but ignored in subsequent cases,[4] provides no vehicle for escape. Although the Harrisons' monetary loss far exceeds the loss experienced by plaintiff in *D'Ambrosio*, the quantum of loss, by itself, does not bring the case within the ambit of footnote five.[5] For a case to fall within the

---

**3.** The Act vests in the Commissioner of Insurance the power to investigate carrier practices and, in an appropriate case, bring a proceeding for a fine. An aggrieved insured is relegated to the remedies provided by the Act if he suspects his insurer of bad-faith dealings.

**4.** *Frank v. Lincoln National Life Insurance Company*, 555 F.Supp. 808, 809 (E.D.Pa.1983); *Commercial Union Assurance Company v. Pucci*, 523 F.Supp. 1310, 1321 (W.D.Pa.1982); *Jarvis v. Workmen's Compensation Appeal Board*, 497 Pa. 379, 441 A.2d 1189, 1192 (1982); *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147, 159 (1981); *Meyers v. USAA Casualty Insurance Company*, 439 A.2d 165, 166 (Pa.Super.Ct.1982); *Nazer v. Safeguard Mutual Assurance Company*, 293 Pa.Super. 385, 439 A.2d 165, 166 (1981); *Evans v. Government Employees Insurance Company*, 291 Pa.Super. 342, 435 A.2d 1258, 1259 (1981).

In *Mason v. Western Pennsylvania Hospital*, 499 Pa. 484, 453 A.2d 974 (1982), Justice Nix mentioned the footnote in his concurring and dissenting opinion. He observed, however, that the *D'Ambrosio* exception had not yet been met, and suggested that circumstances must indeed be compelling in order to allow recovery of emotional distress damages under an assumpsit claim: where defendant hospital negligently performed a sterilization operation and plaintiff later became pregnant, Justice Nix rejected "the proposition that a reasonable person is likely to become seriously emotionally disturbed by the foiling of his or her choice concerning procreation." 453 A.2d at 980.

**5.** "Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such distress." RE-

exception, not only must the subject matter be fundamental, but defendant's conduct must be something close to outrageous.[6]

Nationwide assigned the fire loss to its most experienced fire adjuster and retained an independent fire investigator. That investigation revealed—and plaintiffs do not dispute—that the fire was indeed caused by arson, that there was no forcible entry into the home, and that plaintiffs were suffering financial difficulties at the time of the fire. These facts led defendant reasonably to suspect plaintiffs of knowledge of or responsibility for the arson.

■ Plaintiffs fault the investigation only by submitting that defendant negligently failed to investigate additional, alternative suspects and that defendant had no absolute evidence that Elliot Harrison was responsible for the fire. "In short," plaintiffs argue, "the record shows that Nationwide just did not adequately investigate the fire." Plaintiffs' Memorandum of Law Contra Defendant's Motion for Summary Judgment, 26. *D'Ambrosio* makes it clear, however, that mere inadequacy of investigation is not conduct sufficiently outrageous to constitute a breach "particularly likely to cause emotional disturbance."[7] Therefore, Counts II and VI must be dismissed.

## COUNT III

■ The third count, seeking compensatory and punitive damages based upon alleged libels and slanders relating to the defendant's denial of the claim, must also be rejected. Under the "Unfair Insurance Practices Act," an insurance company is obligated to explain the basis for denial of a claim 40 PA.STAT.ANN. § 1171.-5(a)(10)(xiv) (Purdon 1982). The Restatement (Second) of Torts § 592A provides that "one who is required by law to publish defamatory matter is absolutely privileged to publish it." The Pennsylvania Supreme Court has held:

> Plaintiff's incendiarism was a relevant, material and (if established, would be a) complete defense to his claim on a fire insurance policy and (2) such an averment when contained in an answer to plaintiff's suit to recover on his fire insurance policies is *absolutely privileged* and (3) even if made falsely or maliciously and without reasonable and probable cause, *is an absolute bar* to an action of libel based on such averments.

*Greenberg v. Aetna Insurance Company,* 427 Pa. 511, 235 A.2d 576, 578 (1967) (emphasis in original).

## COUNT IV

The fourth count seeks compensatory and punitive damages for fraud. It too cannot withstand the motion for partial summary judgment. The elements of fraud as set forth in *Edelson v. Bernstein,* 382 Pa. 392, 115 A.2d 382 (1955), are: 1) a misrepresentation, 2) the fraudulent utterance of it, 3) the intention that the victim will be induced to act on it, 4) justifiable reliance on it, and 5) damage. 115 A.2d at 383. Plaintiffs' proof falls short of any demonstration that Nationwide intended that the plaintiffs be induced to act on Nationwide's alleged misrepresentation.

STATEMENT (SECOND) OF CONTRACTS § 353 comment a (1981).

6. *Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 353 comment a, illustration 1 (1981):

> A contracts to construct a house for B. A knows when the contract is made that B is in delicate health and that proper completion of the work is of great importance to him. Because of delays and departures from specifications, B suffers nervousness and emotional distress. In an action by B against A for breach of contract, the element of emotional disturbance will not be included as loss for which damages may be awarded.

(emphasis supplied). This illustration makes it clear that, even in a case where the contract is crucial to a particularly vulnerable plaintiff, merely negligent conduct on the part of the defendant will not support an award of damages for emotional disturbance.

7. "Surely the present record, which reveals that appellee *investigated appellant's claim and supplied appellant with its basis for denial,* provides no factual support for the suggested cause of action." *D'Ambrosio,* 431 A.2d at 971 (emphasis supplied).

Plaintiffs contend that the policy statement is designed to mislead its reader: advertising language on the first page and illustrative cartoons on the second page are said to constitute misrepresentation of the coverage afforded. The first page, however, cautions its reader: "For a summary of the important hazard and liability protection you now have, see the illustrations on the following page. Exact coverages and limitations are detailed in the policy itself." This language gives notice that the entire document constitutes the policy, and, contrary to plaintiffs' contentions, directs the reader to examine the policy beyond the first few pages. Plaintiffs have not, therefore, made out a *prima facie* case of fraud.

### COUNT V

The fifth count of plaintiffs' claim, seeking compensatory and punitive damages for violation of the "Unfair Insurance Practices Act," asserts a private cause of action for damages greater than $20,000. The relief sought by plaintiffs is not what the Act provides as a penalty for its violation. 40 PA.STAT.ANN. § 1171.11 (Purdon 1982). The claim is therefore barred by *Nazer v. Safeguard Mutual Assurance Company*, 293 Pa.Super. 385, 439 A.2d 165 (1981).

### CONCLUSION

In an accompanying Order, defendant's motion for partial summary judgment is granted with respect to Counts II through VI.